IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CAROL RODRIGUEZ, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:20-cv-1432 |
| | § § | JURY DEMANDED |
| TOYOTA MOTOR MGF TEXAS, INC. | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

**NOW COMES**, Plaintiff, Carol Rodriguez (hereinafter referred to as "Ms. Rodriguez" or "Plaintiff"), complaining of and about Defendant, Toyota Motor MGF Texas, Inc. (hereinafter referred to as "Defendant"), and for cause of action files this Original Complaint, showing to the Court the following:

## I.
## PARTIES AND SERVICE

1. Plaintiff, Carol Rodriguez, is a citizen of the United States and the State of Texas and resides in San Antonio, Bexar County, Texas.

2. Defendant, TOYOTA MOTOR MGF TEXAS, INC., within the State of Texas and operating business in San Antonio, Bexar County, Texas.

1

3.  Defendant TOYOTA MOTOR MFG, TEXAS, INC., may be served with process by serving its Registered Agent of Service: C T Corporation System, 1999 Bryan St., Ste. 900 Dallas, TX 75201-3136 USA

## II.
## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes, namely Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e-2(a)(1) (2012).

5.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes, namely The American's of Disabilities Acts of 1990, 42 U.S.C. § 12112.

6.  Venue is proper in the Western District of Texas – San Antonio Division pursuant to 28 U.S.C. § 1391(a), because this is the judicial district where a substantial part of the events or omission giving rise to the claim occurred.

## III.
## NATURE OF ACTION

7.  This is an action brought pursuant to Title VII (Sec.2000e) to correct and recover for Defendant's unlawful employment practices on the bases of Plaintiff's gender (sex), disability discrimination under the ADA (42 USC 12101) and Defendant's retaliation against Plaintiff for her opposition to such discriminations. This action seeks to recover damages caused to Plaintiff by Defendant's unlawful and discriminatory employment practices, including damages from Plaintiff's disciplinary actions from Toyota Motor MGF Texas, Inc. (hereinafter referred to as "Toyota").

## IV.
## CONDITIONS PRECEDENT
## EXHAUSTION OF ADMINISTRATION REMEDIES

8. All conditions precedent to jurisdiction have occurred with regard to exhaustion of administrative remedies.

9. On November 18, 2019, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant for discrimination based on sex, disability and retaliation (Charge No. 451-2020-00614).

10. Subsequently the EEOC issued Plaintiff a Notice of Right Sue, dated September 18,2020. Plaintiff files this lawsuit within ninety (90) days of receiving the Notice. Therefore, this lawsuit is timely filed.

11. No administrative exhaustion or other conditions precedent are required prior to filling of claims under 42 U.S.C. § 1983.

## V.
## FACTS

12. Defendant hired Ms. Rodriguez around November, 2009 as a leased employee through Aerotech.

13. Ms. Rodriguez performed admirably and was hired as a fulltime employee on April 18, 2011 in the position of Quality Inspector.

14. Ms. Rodriguez began experiencing sexual harassment from interactions with Zeke Santillan, which began around the summer of 2013. In this regard, Toyota's supervisors and human resources department were well acquainted with the complaints about Mr. Santillan's degrading sexual comments about and toward women working around him; not just by Ms. Rodriguez, but other female employees.

15. Mr. Santillan had another complaint filed against him in 2013, which was raised by another female employee. Ms. Rodriguez was called in to give a statement to human resources about Mr. Santillan's conduct at that time. Ms. Rodriguez detailed Mr. Santillan's actions, including Mr. Santillan constantly wanting/trying to touch Ms. Rodriguez and give her hugs. Mr. Santillan was moved out of Ms. Rodriguez's area at that time. Brian Cunningham in Human Resources called and spoke with Ms. Rodriguez on a separate issue, and at the end of that call, Mr. Cunningham confirmed Mr. Santillan had been moved. However, no further discipline as to Mr. Santillan was known to have occurred, although Ms. Rodriguez would not necessarily be aware of any verbal or written warnings.

16. In March of 2018, Ms. Rodriguez was transferred back into a department where Mr. Santillan was located. Mr. Santillan kept his distance from Ms. Rodriguez for a short amount of time, as Ms. Rodriguez was in a different group in the department. However, in November of 2018, Mr. Santillan started his same antics again after Ms. Rodriguez was placed back in his group.

17. Between November of 2018 and January of 2019, Ms. Rodriguez experienced and shared with HR at Toyota about Mr. Santillan's conduct that Ms. Rodriguez had to witness and endure.

18. This would include instance where Ms. Rodriguez and Mr. Santillan were discussing an issue with a work process and Mr. Santillan concluding that Ms. Rodriguez owed, "Alfred a blowjob," while Mr. Santillan placed his tongue against his cheek.

19. At a later instance, Mr. Santillan made another comment to Ms. Rodriguez that she owed several men blowjobs.

20. On a separate occasion, Mr. Santillan told Ms. Rodriguez that she, "could not have

accidentally stopped the line with her hips because she has no ass. It must have been her big feet or big tits." Mr. Santillan then laughed and proceeded to walked away.

21. On a separate occasion when Ms. Rodriguez needed to use the restroom, Mr. Santillan would ask if she, "needed to take a shit?"

22. On multiple occasions, Mr. Santillan would make sexual gestures to Ms. Rodriguez as if squirting sperm at her.

23. On a separate occasion while working together in a truck, Mr. Santillan attempted to grab Ms. Rodriguez's breast and came within inches of doing so. Ms. Rodriguez verbally stopped him.

24. Ms. Rodriguez also witnessed another employee by the name of Michelle Miller ask Mr. Santillan if he, "had enough," while she bent over so he could look at her butt and asked if he liked it.

25. Ms. Rodriguez also heard Ms. Miller asking a Team Member if he wanted to touch Ms. Rodriguez's butt. When Ms. Rodriguez reported this, no action was taken for Ms. Miller's conduct.

26. Mr. Santillan has spread several false and inappropriate stories about Ms. Rodriguez throughout the plant. This was due to his dislike for Ms. Rodriguez given her continued push back and complaints about his misconduct.

27. After enduring Mr. Santillan's abuse for many years on a daily basis, Ms. Rodriguez began feeling uncomfortable, stressed and agonized about her interactions with Mr. Santillan. Ms. Rodriguez began feeling aware of Mr. Santillan's retaliation towards her.

28. Ms. Rodriguez was not the only woman in the plant that was experiencing the same

treatment, and her immediate supervisors were well aware of Mr. Santillan's character and often witnessed and ignored it.

29. On January 23, 2019, Ms. Rodriguez and Mr. Santillan had a heated discussion on the line and Mr. Santillan had a demeaning tone towards Ms. Rodriguez. After the incident, Ms. Rodriguez went to her supervisor, Carlos Rodriguez, to discuss the immediate treatment that had occurred.  Mr. Rodriguez recommended that Ms. Rodriguez take a break to calm down and clear her head.  Ms. Rodriguez was shaken up, so she asked if she could take the rest of the day off and he approved. Mr. Santillan assumed that Ms. Rodriguez went to HR rather than going home. Mr. Santillan then went to HR to try to defend himself and put up a defense against a complaint he "believed" had occurred. The following day, Mr. Rodriguez informed Ms. Rodriguez that there was an open investigation. Ms. Rodriguez had a two-hour meeting with someone by the name of John Luna to take down all the actions of sexual harassment and gender issues that Mr. Santillan was engaging in.  When he heard the information, Mr. Luna stated that such actions should lead to termination.  Mr. Luna also spoke with Mr. Rodriguez. Mr. Rodriguez knew that Ms. Rodriguez was being sexually harassed, but did not look into it nor did he know that Mr. Santillan was the main perpetrator.

30. During the investigation, Ms. Rodriguez went on leave due the mental and physical health issues that had arose and worsened gradually at that point.  As a result of the treatment Ms. Rodriguez had gone through, Ms. Rodriguez began experiencing symptoms related to anxiety, stress, depression, lack of sleep and strong, daily headaches. Ms. Rodriguez continues to experience them to this day. Ms. Rodriguez has been receiving regular treatment since January 24, 2019.

31.     Ms. Rodriguez returned on March 12, 2019, and Mr. Santillan was moved to a different area and shift.  However, when Ms. Rodriguez returned, she was placed in isolation and treated coldly by her coworkers, as many were upset about the complaints against Mr. Santillan and the fact that he was moved.

32.     Ms. Rodriguez asked Carlos Rodriguez why Mr. Santillan was not terminated. Mr. Rodriguez then motioned with his finger for Ms. Rodriguez to quiet down and told her to just let it go.  Ms. Rodriguez was told many times thereafter to just forget about it and that he was gone and not working around her anymore. Ms. Rodriguez was also told by her new group leader, Luis Corpus, that Mr. Santillan was not being terminated because he had a clean record, although this was false, as he had the same type of complaints made against him by employees by the name of Evette Winter after Ms. Rodriguez's first complaint. Mr. Santillan had also been engaging in this same treatment against others, including employees by the name of Yolanda Rosel and Patricia Wireman. Ms. Rodriguez also recalled that Mr. Santillan had mentioned to her that he had, "friends in high places."

33.     In the Summer of 2019, Ms. Rodriguez was on short-term leave for a work-related shoulder injury. Ms. Rodriguez did not want to go through the worker's comp. process due to prior difficulties in using such a system. This was noted and recorded in her communications with the worker's comp. representative.  When Ms. Rodriguez returned, she continued to receive retaliatory treatment from her co-workers and supervisors on a near daily basis.  This harassment, including shunning, speaking negatively to and about Ms. Rodriguez and hiding her phone and wallet. This has heightened her disability issues of anxiety, severe stress, sleeplessness and depression.

34.     In mid-October of 2019, Ms. Rodriguez had to loudly and aggressively comment

7

back to peers in her department regarding the picking-on and harassment. Since Human Resources refuses to rectify the situation by ensuring the behavior be stopped or persons be disciplined, Ms. Rodriguez is now being disciplined with warning for her comments made that are brought on by the very stress and anxiety that Toyota is allowing to happen.

35. Ms. Rodriguez continues to experience discrimination and retaliation from her co-workers, and management refuses to rectify this ongoing discriminatory and retaliatory conduct.

## VI.
## CAUSE OF ACTION

### COUNT 1 - ADA DISABILITY DISCRIMINATION

36. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

37. Plaintiff is disabled as defined by the ADA. See 42 U.S.C. §§ 12102 and 12111(8).

38. Defendant violated the ADA by intentionally discriminating against Plaintiff on the basis of his disability, including treating him less favorably than non-disabled employees. See 42 U.S.C. § 12112.

39. Defendant further discriminated against Plaintiff by denying her request for reasonable accommodations, in violation of 42 U.S.C. §§ 12111(9) and 12112(b)(5)(A). Plaintiff repeatedly approached Defendant's management, Human Resources, and Ethics department to report the increasingly intolerable work environment and its negative impact on her mental health and anxiety. On several occasions, Plaintiff requested accommodations to avoid and/or counteract the aggravation of her disability. Defendant refused and gave no reason.

## COUNT 2: SEX DISCRIMINATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

40.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

41.     Defendants intentionally engaged in unlawful employment practices against Plaintiff on the basis of her sex in violation of Title VII, 42 USC SEC 2000e.

## COUNT 3 – RETALIATION

42.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

43.     Defendant intentionally retaliated against Plaintiff because of the complaints made to Defendant about the disability discrimination, in violation of the ADA. Despite Defendant's knowledge of Plaintiff's disability, Plaintiff was subjected to ever-increasing hostile treatment and an unsafe work environment.  Defendant's refusal to take any remedial action or otherwise make any reasonable accommodation for Plaintiff exacerbated her anxiety, stress, depression, lack of sleep and strong, daily headaches. Plaintiff continued to plead with Defendant to investigate and address the pervasively hostile and unsafe work environment and those employees responsible for same.  Instead and shortly thereafter, Plaintiff was being disciplined with warning.

44.     Defendant has retaliated against Plaintiff by taking an adverse employment action against her and after she opposed the illegal discriminatory practices used against Plaintiff's sex

## VII.
## DAMAGES

45.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a)    Compensatory damages (including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-economic damages) allowed under the Texas Labor Code.

    b)    Economic damages in the form of lost back pay and lost fringe benefits in the past. Economic damages, in the form of lost wages and fringe benefits that will, in reasonable probability, be sustained in the future.

    c)    All reasonable and necessary costs in pursuit of this suit, including attorney's fees pursuant to the Texas Labor Code.

46.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff hereby seeks monetary relief over $200,000 but not more than $1,000,000 including costs, expenses, pre- and post-judgment interests, and attorney's fees. Plaintiff further requests that the non-expedited rules apply in this case.

## VIII.
## JURY DEMAND

47.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## IX.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Carol Rodriguez, respectfully prays that Defendant, TOYOTA MOTOR MGF OF TEXAS, INC., be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court, together with interest as allowed by law, costs of court, and such other and further relief to which the Plaintiff may be justly entitled at law or in equity.

Respectfully Submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
2603 Augusta Dr., Suite 1450
Houston, TX 77057
Main: 713-742-0900
Fax: 713-742-0951
**ATTORNEYS FOR PLAINTIFF**
**CAROL RODRIGUEZ**